United States Courts
Southern District of Texas
FILED

APR 1 9 2012

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

UNITED STATES OF AMERICA     §
    §
v.     §
    §
FLOYD LESLIE BROOKS     §
aka Floyd Brook     §
aka Floyd Brooke     §
aka Jimmie Sims     §
aka Jimmy Smith     §

CRIMINAL NO. H-**12 -223**

18 U.S.C. § 371

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT ONE

**Title 18, U.S.C. §371**
**Conspiracy to Receive Kickbacks in**
**Violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)**

#### A. Introduction

At all times material herein:

1.     FLOYD LESLIE BROOKS ("BROOKS"), defendant herein, at all times relevant, was a resident of the state of Texas.

2.     City Nursing Services of Texas Inc., ("City Nursing"), at all times relevant, was an office located at 9888 Bissonnet Street, Suite 285, Houston, Texas 77036, that was owned by U.I. that billed Medicare and Medicaid for physical therapy services.

3.     A "health care benefit program" is defined by Title 18, United States Code, Section 24(b) as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is

providing a medical benefit, item, or service for which payment may be made under the plan or contract." The Medicare Program ("Medicare"), also known as the Federal Health Insurance for the Aged and Disabled Program, and the Texas Medicaid Program ("Medicaid") were health care benefit programs as defined in Title 18, United States Code, Section 24(b).

4.     Medicare was created by the Social Security Act of 1965. The United States Department of Health and Human Services administered Medicare through the Centers for Medicare and Medicaid Services ("CMS"). CMS contracted with Trailblazer Health Enterprises L.L.C. to administer Medicare in Texas.

5.     Medicare was comprised of four different parts; however only Medicare Part B was applicable to this case. Medicare Part B was a voluntary insurance program that was financed by premiums paid by enrollees and funds appropriated by the Federal government via payroll taxes. Individuals with Medicare Part B insurance, were known as "beneficiaries," and were entitled to have payments made on their behalf for covered medical and health services, known as "benefits."

6.     Physical therapy was a covered Medicare benefit when it was provided in accordance with Medicare terms and conditions, including, that the physical therapy be reasonable and necessary for the diagnosis or treatment of illness or injury, that it be provided a qualified person who is specifically trained in physical therapy, that the physical therapy be provided under the care of a physician, and that the services be furnished under a written plan of care and treatment. Medicare required the physical therapy services to be provided by individuals who met minimum qualification and training requirements. Services related to activities for the general good and welfare of beneficiaries such as to promote overall fitness and flexibility, and activities to provide diversion or general motivation were not benefits paid for by Medicare.

7.      Medicaid was a joint federal-state entitlement program that was implemented in 1967 under the provisions of Title XIX of the Social Security Act of 1965. The Texas Health and Human Services Commission ("HHSC") was the single state agency with oversight responsibility for Medicaid in Texas. HHSC contracted with the Texas Medicaid and Healthcare Partnership to administrator Medicaid in Texas.

8.      Medicaid provided certain medical benefits to eligible needy families, pregnant women, children, disabled individuals and individuals over 65 years of age with limited income. Individuals with Medicaid insurance, were also known as "beneficiaries," and were entitled to have payments made on their behalf for covered medical and health services, known as "benefits."

9.      Physical therapy was a covered Medicaid benefit when it was provided in accordance with Medicaid terms and conditions, including, that it was prescribed by a physician, it was reasonable and medically necessary, and it was expected to improve a beneficiary's condition. Services related to the general good and welfare of beneficiaries, such as general exercises to promote overall fitness and flexibility, and activities to provide diversion and motivation were not covered Medicaid benefits.

10.     When Medicaid beneficiaries had Medicare benefits in addition to Medicaid benefits, Medicaid was considered secondary insurance and paid the Medicare deductible and coinsurance liabilities.

**B. The Conspiracy**

11.     Beginning on or about January 12, 2007, and continuing thereafter to on or about June 19, 2009, in the Houston Division of the Southern District of Texas and elsewhere,

**FLOYD LESLIE BROOKS**

defendant herein, did knowingly and willfully, combine, conspire, confederate, and agree with others, known and unknown, including U.I. to commit an offense against the United States, namely to violate the Anti-kickback Statute, that is to knowingly and willfully receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring individuals to City Nursing for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## Object of the Conspiracy

12.     It was the object of the conspiracy to unlawfully enrich the defendant, and others known and unknown, by referring beneficiaries to U.I. in return for payments, so that U.I. could bill Medicare and Medicaid for services, and receive payment from Medicare and Medicaid for those services which were billed under the beneficiary numbers of those beneficiaries referred by the defendant.

## Manner and Means of the Conspiracy

The manner and means of the conspiracy included, but were not limited to, the following:

13.     Defendant BROOKS would and did enter into an agreement to refer beneficiaries to U.I. so that City Nursing could bill Medicare and Medicaid for services.

14.     Defendant BROOKS would and did refer beneficiaries to U.I. in return for payment.

15.     Defendant BROOKS would and did receive at least $13,700.00 from U.I. for referring beneficiaries to City Nursing between January 12, 2007 and June 19, 2009.

16.     Defendant BROOKS would and did refer G.F. to U.I., so that G.F. could also receive payments from U.I. for the referral of beneficiaries to City Nursing.

17.    City Nursing would and did submit at least $1,000,000.00 in claims to Medicare and Medicaid for beneficiaries referred by defendant BROOKS.

18.    City Nursing would and did receive at least $790,460.00 as payment for services billed to Medicare and Medicaid for beneficiaries referred by defendant BROOKS.

**Overt Acts of the Conspiracy**

19.    In furtherance of the conspiracy and to achieve the objects thereof, in the Southern District of Texas and elsewhere, the defendant performed and caused to be performed, the following overt acts, among others, all in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

20.    On or about the dates reflected in the table below, defendant BROOKS received payment for referring Medicare beneficiaries to U.I.:

| Overt Act | Date | Check Number | Amount of referral received by Brooks |
|---|---|---|---|
| 1 | 01/12/07 | 3022 | $250.00 |
| 2 | 02/02/07 | 3059 | $300.00 |
| 3 | 02/17/07 | 3084 | $300.00 |
| 4 | 03/26/07 | 3165 | $500.00 |
| 5 | 04/27/07 | 3181 | $500.00 |
| 6 | 05/18/07 | 3230 | $200.00 |
| 7 | 05/23/07 | 3242 | $500.00 |
| 8 | 05/24/07 | 3246 | $250.00 |
| 9 | 06/29/07 | 3299 | $500.00 |
| 10 | 07/21/07 | 3328 | $130.00 |
| 11 | 07/25/07 | 3335 | $370.00 |
| 12 | 07/27/07 | 3341 | $600.00 |
| 13 | 08/03/07 | 3374 | $250.00 |
| 14 | 08/15/07 | 3414 | $250.00 |
| 15 | 08/17/07 | 3415 | $500.00 |
| 16 | 09/18/07 | 3018 | $600.00 |
| 17 | 09/26/07 | 3027 | $200.00 |
| 18 | 02/19/08 | 3242 | $500.00 |
| 19 | 04/11/08 | 3292 | $500.00 |
| 20 | 04/21/08 | 3314 | $500.00 |
| 21 | 05/20/08 | 3375 | $500.00 |
| 22 | 06/17/08 | 3436 | $500.00 |

| 23 | 07/11/08 | 3480 | $500.00 |
|----|----------|------|---------|
| 24 | 08/18/08 | 3510 | $500.00 |
| 25 | 09/23/08 | 3566 | $500.00 |
| 26 | 10/15/08 | 3601 | $500.00 |
| 27 | 11/21/08 | 3654 | $500.00 |
| 28 | 12/15/08 | 3683 | $500.00 |
| 29 | 05/15/09 | 3824 | $500.00 |
| 30 | 06/19/09 | 3846 | $500.00 |

all in violation of Title 18, United States Code, Section 371.

## FORFEITURE NOTICE

### 18. U.S.C. § 981(a)(1)(C); 28 USC §2461

21.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) as incorporated by 28 USC §2461 the United States give notice to defendant

### FLOYD LESLIE BROOKS,

that upon conviction for a violation of Title 18, United States Code, Section 371 (conspiracy related to a health care benefit program) as alleged in this Criminal Information, all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offense, shall be forfeited to the United States. Such property includes but is not limited to:

a)   Approximately $13,700.00 in United States currency representing the amount of proceeds obtained by the defendant personally for referring individuals for items and services for which payment was made in whole or in part under a Federal health care plan.

## MONEY JUDGMENT

22.     Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

## SUBSTITUTE ASSETS

23.     In the event that the property subject to forfeiture, as a result of any act or omission by any defendant,

6

a.   cannot be located upon exercise of due diligence;

b.   has been transferred or sold to, or deposited with a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value, or

e.   has been comingled with other property which cannot be divided without difficulty,

it is the intention of the United States to seek forfeiture of any other property of the defendant up to the value of such property, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY